No. 22,721.

D. A. SAMPLE and KATIE SAMPLE, *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEFFERSON, *Appellee*.

SYLLABUS BY THE COURT.

1. REMOVAL OF BRIDGE — *Taking of Private Property — Compensation Should Be Made.* Under the circumstances stated in the opinion, removal by the board of county commissioners of a bridge furnishing the sole means of ingress to and egress from the plaintiffs' farm, would constitute a taking of property, for which compensation should be made.

2. SAME — *Giving Plaintiffs Access to Farm Over Another Road — No Compensation for Loss of Bridge.* Deprivation of property would not be avoided by giving the plaintiffs access to their farm by means of a road established under a statute which required them to pay expense of the road proceeding, damages resulting from opening the road, cost of constructing the road, including grading and bridging, and expense of maintaining the road.

3. SAME—*No Money Compensation for Loss of Bridge Available to Plaintiffs—Injunction.* The legislature has made no provision for compensation for deprivation of property under the circumstances disclosed, no action for damages is available to the plaintiffs, and consequently they are qualified to enjoin removal of the bridge.

4. SAME—*Remedy by Injunction—No Equitable Estoppel.* Conduct of the plaintiffs and of the board of county commissioners considered, and *held*, the plaintiffs were not estopped in equity from invoking the remedy of injunction.

Sample v. Jefferson County.

Appeal from Jefferson district court; FRED T. WOODBURN, judge. Opinion filed March 12, 1921. Reversed.

*J. J. Schenck, C. P. Schenck,* both of Topeka, and *H. N. Casebier,* of Oskaloosa, for the appellants.

*W. O. Worswick,* county attorney, *Oscar Raines,* of Topeka, and *H. T. Phinney,* of Oskaloosa, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to enjoin removal of a bridge. Injunction was denied, and the plaintiffs appeal.

The plaintiffs' land is bounded on the south by the Kansas river and on the north by the Delaware river. Neither river is fordable. The land is bounded on the west by a tract 100 feet wide, owned by a drainage district. On this tract a dike has been constructed which extends from river to river. The dike is 32 feet wide at the bottom, 8 feet wide at the top, and from 8 to 14 feet high. The remainder of the strip was excavated to procure material for the dike. The land west of the drainage-district strip is owned by Garrett Trent. North of his land is a highway known as the Golden Belt road, which crosses the Delaware by means of a bridge, and extends eastward to the city of Perry, and beyond. The portion of Trent's land next to the drainage-district strip is low, and water frequently stands upon it to a depth of several feet for long periods of time. If a road connecting the plaintiffs' land with the Golden Belt road were constructed there, it would be necessary to cross the drainage-district dike and excavation, make a grade, and put in a bridge. At the northeastern extremity of the plaintiffs' land is a steel bridge 150 feet in length, across the Delaware river, which has stood there for many years. The bridge forms a portion of a highway leading to Perry, one mile north, which is the plaintiffs' market. A change in the channel of the river rendered the bridge useless for every purpose except communication with the plaintiffs' land, and the commissioners desired to remove the bridge to a place where it would be of greater service. To this end the portion of the highway occupied by the bridge was vacated by proceedings which it will be assumed, without discussion, were sufficient for the purpose. The plaintiffs put in a claim for damages to their land

occasioned by the vacation, and were allowed the sum of $300. While the commissioners were in session considering vacating the highway, the plaintiffs presented a petition for a road through the Trent land to the Golden Belt road. Proceedings followed, resulting in a finding that the road would be of public utility, and in an order that the survey and plat be recorded, and the road be opened for public travel as a public road. Trent was allowed damages in the sum of $667.50. The plaintiffs were strongly opposed to the vacation proceedings, and yielded to them only on condition the commissioners would provide an outlet through the Trent land. The petition for that purpose was prepared by the county engineer, was presented at the suggestion of the county commissioners, and at the time the order of vacation was made the commissioners told the plaintiffs the commissioners "would get an outlet west." The commissioners acted under section 8767 of the General Statutes of 1915, which requires the petitioner to pay all expenses and all damages allowed, and to maintain the road and keep it in repair at his own expense. The commissioners had no intention of opening a public road and keeping it in repair at public expense. On discovering this attitude of the commissioners, the plaintiffs commenced their action before steps were taken to open the road.

In the case of *Highbarger v. Milford,* 71 Kan. 331, 80 Pac. 633, the members of the court were in agreement respecting the fundamental principles of law involved. The disagreement related to application of those principles, and the majority opinion adopted the streets surrounding a city block as the ordinary standard of what is reasonably necessary to enjoyment of lots within the block. This rule is more strict against the public and more liberal toward the landowner than the authorities cited in the dissenting opinion. If application of the rule be confined strictly to situations like the one presented in the Highbarger case, the text of Elliott on Roads and Streets, quoted in the dissenting opinion and not questioned by the majority of the court, will certainly govern the present case. The result is that on the authority of the opinions in the Highbarger case, vacation of the highway and removal of the bridge across the Delaware river would, under the circumstances, constitute a taking of plaintiffs' property, for which compensation should be made.

Sample v. Jefferson County.

The plaintiffs' property consists in means of travel to and from their land, as an incident thereto. Removal of the bridge would not merely inconvenience them, or place them at a disadvantage; the bridge is the sole means of ingress and egress, indispensable to enjoyment of the land. While county commissioners have large discretion in promoting the public welfare by relocating bridges, with the exercise of which courts may not interfere (*Anderson v. Cloud County*, 83 Kan. 419, 111 Pac. 464; *The State, ex rel., v. Cowley County*, 87 Kan. 732, 125 Pac. 23), the commissioners are restrained by the positive mandate of the law that private property may not be taken without making adequate compensation.

The statute relating to vacating highways makes no provision whatever for paying damages to persons whose property may be taken by that method; and whatever the rule may be relating to cities, no action lies against a county for damages resulting from vacating a highway or removing a bridge (*Comm'rs of Coffey Co. v. Venard*, 10 Kan. 95; *Silver v. Clay County*, 76 Kan. 228, 91 Pac. 55). Being otherwise remediless, the plaintiffs are entitled to an injunction preventing removal of the bridge.

The commissioners say that if the plaintiffs had another way to travel to and from their farm, their property would not be taken by removal of the bridge, although such way were less desirable and would make the distance to market considerably greater. For present purposes correctness of the statement may be conceded. The commissioners say further they were in the act of providing the plaintiffs a way through the Trent land when the action was commenced. Correctness of this statement may not be conceded. What the commissioners were doing was to enable the plaintiffs to provide the public and themselves a way, at their own expense. If the plaintiffs accept the Trent road, they must pay the expense of the road proceeding, the damages allowed Trent, the cost of constructing the road, including grading and bridging, and the expense of upkeep, as long as they or the public desire to use it. Leaving out of account depreciation in market value of the land by rendering it less accessible to market, and leaving out of account the inconvenience of using a makeshift road, removal of the bridge would constitute a taking of the plaintiffs' property

to the extent of the expenditures indicated. The plaintiffs are not obliged to yield their property without compensation, the commissioners are not allowed to make compensation, and consequently the plaintiffs are authorized to appeal to a court of equity to prevent a deprivation of property.

The commissioners say the plaintiffs have estopped themselves from enjoining removal of the bridge. The claim for damages presented in the vacation proceeding was a nullity, and the order allowing damages was void. The commissioners were responsible for institution of the road proceeding and, under the circumstances which have been stated, are not able to urge estoppel successfully.

The legislature of 1874 passed an act relating to private roads, which this court decided was unconstitutional, in the case of *Clark v. Mitchell County*, 69 Kan. 542, 77 Pac. 284. The general road law of 1874, however, authorized a public road at public expense, to meet the needs of a landowner in the situation of the plaintiffs, and to meet the needs of the public. The county commissioners will be interested in having the assessor visit the plaintiffs at a certain time of the year, and many other public purposes are subserved by keeping open a road to the home of the citizen. In 1913, a qualification was added to the statute, requiring the landowner to keep the road in repair. In 1915, the whole cost of the road was cast upon the landowner. The result is, in this instance an expensive bridge must be maintained for the benefit of a single farm.

The judgment of the district court is reversed, and the cause is remanded with direction to grant the injunction.