No. 39,362

In the Matter of the Road Petition of Wadie G. McCluggage, et al. (WADIE G. McCLUGGAGE, *Appellee,* v. M. L. LOOMIS, *Appellant.*)

(270 P. 2d 248)

Opinion filed May 8, 1954.

*F. J. Leasure,* of El Dorado, argued the cause and was on the briefs for the appellant.

*George J. Benson,* of El Dorado, argued the cause, and *George S. Benson,* and *Page W. Benson,* both of El Dorado, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This appeal involves a proceeding to have a road laid out and opened over the land of an adjoining landowner in order that petitioner might have easier access to a small tract of her land without crossing a stream which separated that part from the remainder of her land.

The petitioner prevailed before the board of county commissioners and respondent landowner appealed to the district court, which sustained the order of the county commissioners. Respondent has appealed to this court.

Respondent's exhibit 4 was admitted in evidence and is as follows:

The exhibit is included here in order that the reader may more readily visualize the location of petitioner's and respondent's lands, the public highways along the south and west of petitioner's land and the location of the requested road, which is immediately to the east of petitioner's land. The road requested was east of the

line marked "Hedge Row" in the exhibit. The purpose of the road was to give petitioner access to about a seven acre tract which we have marked "X" in the exhibit. The exact location of the requested road may be found in the findings of fact to be quoted presently. Respondent filed written objections to the petition prior to the hearing before the commissioners. The principal objection urged before the commissioners, in the district court and in this court, to the laying out of the road over his land is:

"In asking for said road, said petitioner, Wadie G. McCluggage, cannot bring herself within the purview of the Kansas Statute G. S. 68-117 for the reason the land owned by her which would be served by such road is a part of a contiguous tract of land owned by her which is bounded by and abuts

upon a public highway on the South and on the West. A public highway bounds the Wadie G. McCluggage land on the South for approximately three thousand feet and on the West for approximately eighteen hundred feet."

The pertinent part of G. S. 1949, 68-117, pursuant to which the road was sought, reads:

"That whenever the premises of any person in this state *shall be so completely surrounded by adjoining lands, the property of other persons,* as to be without access to any public highway, then such person may petition the board of county commissioners of the county in which such premises lie for a road, and one road only, through some portion of the adjoining lands, and the board, on presentation of such petition, shall proceed in accordance with the provisions of the sections of the act to which this is amendatory to lay out such road, make returns of plats, and allow damages, if any should be held or allowed: *Provided,* Said road shall not exceed twenty-five feet in width and be laid out upon the quarter or quarter-quarter section lines when practicable." ( Our italics. )

The district court made findings of fact as follows:

"1. In this matter Wadie G. McCluggage is the petitioner and M. L. Loomis is the respondent.

"2. On November 18, 1936, the petitioner became the owner of about 110 acres of land, most of which lies in the Southwest Quarter of Section 16, Township 27, Range 4 in Butler County, Kansas, and about four acres of which lies in the Southwest corner of the Southeast Quarter of said Section 16. At the time petitioner acquired said land, she also acquired an easement or right-of-way one rod wide, running north and west from the highway abutting said land on the south and being between a hedge fence and the Whitewater River. The right-of-way was used to get from the highway to a tract of petitioner's land consisting of about seven acres, lying north of the river. Except for said seven-acre tract all of petitioner's land lies west and south of the river. Of said seven-acre tract about three to four acres thereof is tillable.

"3. All of petitioner's land abuts a public highway on the south and on the west and petitioner can reach either one of said highways from any point on her land without crossing the land of any other person but without using the aforesaid right-of-way petitioner would have to cross the river to get from said seven-acre tract to a highway.

"4. The river running through petitioner's land has a rock bottom and at normal stage it is from 20 to 30 feet wide and is of an average depth of from 1½ to 2 feet. For a short distance it is from 3 to 4 feet deep. Petitioner owns about ¼ mile of the river.

"5. Until about 1951, petitioner used the right-of-way to get from the highway on the south to the seven-acre tract but made no effort to keep the right-of-way in repair or from washing.

"6. The bank on the east side of the river is about twenty feet high and is almost perpendicular. The bank on the west side of the river is not quite so high and not quite so steep. Floods in the Whitewater River throughout the years have constantly washed away the east bank until it has washed away about the south 600 feet of this one rod easement or roadway. For that distance the hedge fence is on the very edge of the river bank, which at this point

is not less than twenty feet above the water's edge and the bank is almost perpendicular. This one rod roadway has been washed into the river until it is not even possible to walk between the river bank and the hedge fence, and not possible to make any use of what was formerly the easement or roadway.

"7. When there was sufficient space between the hedge fence and the river bank, the petitioner and former owners of the 110 acres used the easement or roadway as a place of passage from the highway on the south to the seven-acre tract. During the last few years no one has been able to make any use of the south 600 feet of this easement or roadway.

"8. The respondent owns the land abutting the right-of-way on the east and north.

"9. There is no evidence that the land belonging to the petitioner and the land belonging to the respondent were ever owned by one person at the same time.

"10. On the theory that she had the right to do so, under and by virtue of G. S. 1949, Sec. 68-117, petitioner asked the County Commissioners of Butler County, Kansas, to open and lay out a road 25 feet wide over and across respondent's land from the highway on the south to the seven-acre tract lying north of the river.

"11. Respondent filed his objections to establishing a road as asked for by the petitioner on the ground that the petitioner had no authority for such relief under Sec. 68-117 of the General Statutes of 1949, but that if said roadway be legally established that he be given damages in the sum of $3,000.00.

"12. The County Commissioners as viewers established the road and allowed damages to the respondent in the sum of $209.00 for the land taken, for fencing and for fees, and petitioner paid said amount of $209.00 in to the office of County Treasurer of Butler County, Kansas; which amount the respondent has refused to date to accept and draw from the County Treasurer.

"13. The respondent has appealed to the District Court of Butler County, Kansas, from the order of the County Commissioners on the ground that the County Commissioners had no power or authority to establish the road under Sec. 68-117 of the General Statutes of 1949, but did not appeal from the allowance of damages and no evidence of damage was introduced at the trial.

"14. The estimated cost of building a low-water bridge and cutting down the banks of the river to form an approach to the bridge would cost between $3500 and $4500. There would, in all probability, be additional cost for cleaning out the approaches and removing debris from the bridge after occurrences of high water.

"15. That two low water bridges which are already in existence on the Whitewater River at which places the width and depth of the stream, bottom of the river and banks were comparable to the condition of the width and depth of the river, banks and the bottom of the river as existed where it passed through the McCluggage land. One of said bridges is located approximately one mile north of the McCluggage land on private property and the other is approximately four miles north, where the river crossed a public highway. There was no evidence as to whether these bridges were constructed and maintained by private parties or at public expense."

Its conclusions of law were:

"That the County Commissioners of Butler County, Kansas, did have jurisdiction to establish the road in question under and by virtue of Section 68-117 of the General Statutes of 1949, and that the respondent by claiming damages waived any objections to the power and authority of the County Commissioners under and by virtue of said section and that the order of the County Commissioners is sustained."

In addition to the finding that respondent introduced no evidence of damage to his land in the district court it also should be stated he introduced no evidence on that subject before the county commissioners. His objection to the petition and hearing before the commissioners and in the district court was, as previously indicated, that G. S. 1949, 68-117 was not applicable to the facts in this case and did not authorize the laying out of the road. He expressly alleged in his written objections before the commissioners he sought damages only in the event the road was *legally opened.* He did not allege that he sought damages "in the event the commissioners determined it was legally opened."

In addition to the foregoing findings it also is admitted petitioner moved to dismiss respondent's appeal in the district court. The motion was based on the ground respondent could not claim damages to his land and at the same time contend the county commissioners were without authority to lay out the road.

The record further discloses:

In the district court petitioner demanded to know whether respondent was claiming damages or whether he was merely contending the commissioners had no legal right to lay out the road; respondent replied he was contesting solely the legal authority of the county commissioners to lay out the road under the provisions of G. S. 1949, 68-117 on which petitioner relied; the court reserved its ruling on the motion to dismiss the appeal; the court did not later sustain petitioner's motion to dismiss the appeal but on the contrary it passed on the merits of the appeal and further concluded respondent, by claiming damages, waived any objection to the power and authority of the commissioners. (See conclusion of law previously quoted.)

In the first place we think the trial court erred in its interpretation of the statute. Neither the entire tract of petitioner's land nor the seven acre tract alone is ". . . so completely surrounded by adjoining lands, *the property of other persons,* as to be without access to any public highway. . . ." (Our emphasis.) Moreover, the

court did not find petitioner's entire tract of land or the seven acre tract was so surrounded. (See finding 3.) The statute makes no provision for laying out a road over the land of another or others to a portion of a petitioner's land which is separated from the remainder of his land by a stream, gulch, deep ravine or any other natural depression or obstruction which in its normal state renders access thereto difficult or impossible. The statute declares the precise conditions under which a person is *permitted to petition* the board of county commissioners for a road. County commissioners and courts are without authority or power to substitute their own conditions therefor or to read exceptions into the statute.

Furthermore if it be assumed that the statute contemplates the opening of a road over another's land in order that a petitioner may have access to a public highway from each and every portion of his land, the facts in this case clearly disclose the statute nevertheless is inapplicable. The seven acre tract of land, even if it could be considered separately, is surrounded on the south, west and east by petitioner's own land and by a stream across his own land. Only on the north is it bordered by the land of another, the respondent.

It follows the actions of the county commissioners were wholly without authority of law. Under such circumstances it was early held a district court has full power to review and set aside the order where the record shows the proceeding was without authority of law. (*Comm'rs of Wabaunsee Co. v. Muhlenbacker*, 18 Kan. 129; *Howell v. Redlon*, 44 Kan. 558, 561, 24 Pac. 1109.) The statute sets forth the conditions precedent which must exist before a person may even petition the board of county commissioners for a road. The instant petition for the road alleged none of them.

Touching the subject of damages it is clear respondent introduced no testimony on that subject before the commissioners or in the district court. He claimed no damage unless the road were legally laid out and insisted the proceedings were wholly outside the purview of the statute. He was not obliged to accept damages awarded in an illegal proceeding and he has not done so. Under the circumstances he is not precluded by the illegal award of damages from contesting the legality of the road by appeal. In fact, there could be no legal award of damages in an illegal proceeding to establish a road. The award of damages falls with the illegality of the proceedings in which it was made. (*Sample v. Jefferson County*, 108 Kan. 498, 196 Pac. 440.)

Of course, it often has been held a party may not file a claim for damages, litigate that issue, and thereafter appeal from the amount of the award, thereby conceding jurisdiction and power of the county commissioners to determine the extent of his damage, and at the same time contend no road was laid out. That is the class of cases decided by this court and relied on by petitioner. We need not review them. They are not controlling here. The case cited by petitioner in which no appeal was taken from the award of damages is *Willis v. Stafford,* 84 Kan. 570, 114 Pac. 854. In that case the complaining landowner later sought, in an independent action, to enjoin the opening of the road contending it was not laid out where it was intended to be. Injunctive relief was denied. The case is not helpful.

Respondent, at every stage of the proceedings, raised the issue of the county commissioners' lack of authority to lay out the road under the provisions of the statute. Whether respondent, in a neighborly spirit, should accede to petitioner's request for a road over his land is not the issue before us. If respondent is compelled to yield a right of way over his land under the facts in the instant case why may a right of way not be demanded under numerous situations, not within the scope of the statute, where an acre of land, or even less, is not easily accessible by virtue of some natural obstruction or depression on petitioner's own land?

There may be other conditions than those prescribed in the instant statute under which it would be equitable and just to permit the taking of another's land in order for a petitioner to obtain ready and economical access to separate portions of his own land but if that problem is to be solved on an equitable basis we think the legislature should prescribe the conditions. Petitioner admits she does not contend she is entitled to a "way of necessity" as that term is understood in the common law. Decisions from other jurisdictions cited by petitioner are not controlling under our statute.

Petitioner filed a cross-appeal from the refusal of the court to make additional findings of fact and conclusions of law. She, however, only directs attention to her cross-appeal without stressing it. Although some of the requested findings might have been made they would not affect the decision if they had been made. The requested conclusion of law, in substance, was that the petition for the road and the actions and proceedings of the county commissioners did not involve the exercise of judicial powers and, therefore, the district court had no jurisdiction to review such actions.

While it is sometimes rather loosely stated the establishment of roads involves only legislative and administrative powers such a statement is technically accurate only insofar as it involves the proceedings pertaining to the viewing and laying out of a road. Manifestly, however, the interpretation of a statute in order to determine its applicability to a given situation is not a mere ministerial act. That function is strictly judicial in character. If that function could be exercised with complete finality by a board of county commissioners they would be empowered to do whatever they pleased irrespective of the legality of their acts. The requested conclusion of law was properly denied.

. It follows the rulings from which the main appeal was taken are reversed and the rulings from which the cross-appeal was taken are affirmed. It is so ordered.